# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MARIO ENGLAND, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-8911 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| P.O. R. ALLEN, Individually, and the | ) | |
| CITY OF CHICAGO, a municipal | ) | |
| corporation, | ) | |
| | | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mario England brings this civil rights action under 42 U.S.C. § 1983 alleging claims for unlawful seizure against Defendant Allen, a police officer for the City of Chicago. Plaintiff also brings claims against the City for indemnification. For the reasons set forth below, the Court grants (at least provisionally) Plaintiff's motions *in limine* Nos. 1, 3–7 [58, 60, 61, 62, 62, 63, 64] and grants in part and denies in part Plaintiff's motion No. 2 [59]. Defendants' motions *in limine* [56] are granted in part and denied in part. The Court grants (and provisionally grants) Defendants' motions Nos. 1, 2, 4–13, 15–16 and 18; grants in part and denies in part Defendants' motion No. 3; denies Defendants' motions Nos. 14 and 19–20; and grants in part and defers final ruling in part on Defendants' motions Nos. 3 and 17. This case remains set for a jury trial to commence on July 8, 2019.

### I. Legal Standard

A motion *in limine* is a motion made "at the outset" or "preliminarily." Black's Law Dictionary 803 (10th ed. 2014). Motions *in limine* may be used to eliminate evidence "that clearly ought not be presented to the jury because [it] clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Svcs.*, 115 F.3d 436, 440 (7th Cir. 1997). The party seeking

to exclude evidence "has the burden of establishing the evidence is not admissible for any purpose." *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009). The power to rule on motions *in limine* inheres in the Court's role in managing trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Because motions *in limine* are filed before the Court has seen or heard the evidence or observed the trial unfold, rulings *in limine* may be subject to alteration or reconsideration during the course of trial. *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989).

## II. Plaintiff's Motions *in Limine* [58–64]

### A. Plaintiff's Motion No. 1: Plaintiff's or Witnesses' Prior Bad Acts

Plaintiff moves to bar any reference to his or any witness's prior arrest record, including the nature of the criminal offense and any underlying facts and circumstances of the arrest. Defendant opposes the motion in part, arguing that Plaintiff's prior convictions for driving on a revoked or suspended license and the fact that Plaintiff has never been issued a valid driver's license is highly probative to show Plaintiff's motive for fleeing from Defendant Allen and for attempting to avoid arrest.

Rule 404(b) excludes relevant evidence of other crimes, wrongs, or acts if the purpose is to show a person's propensity to behave in a certain way, but other-act evidence may be admitted for "another purpose" including, but not limited to, "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). However, even if such evidence may be entered under Rule 404(b), the party offering that evidence must still demonstrate that the proffered evidence is not substantially more prejudicial than probative, and that it would not confuse the issues at trial. See Fed. R. Evid. 403.

With regard to evidence of Plaintiff's or any witness's previous arrests, it is well established that arrests that do not result in the arrestee's conviction are generally inadmissible. See, e.g., *Anderson v. Sternes*, 243 F.3d 1049, 1054 (7th Cir. 2001) (noting that even an indirect reference to a criminal defendant's prior arrest was improper). Defendants do not oppose the motion in that regard. Thus, the Court grants Plaintiff's motion to the extent that it seeks to bar evidence of prior arrests.

However, Defendants argue that they should be allowed to admit evidence of (1) Plaintiff's previous convictions for driving on a revoked or suspended license and (2) the fact that Plaintiff has never had a valid driver's license, as evidence of Plaintiffs' motive for fleeing Defendant Allen. While that evidence may satisfy Rule 404(b), at this point the Court cannot conclude that Defendants have cleared the additional hurdle imposed by Rule 403. As discussed below, Plaintiff is barred from offering any testimony inconsistent with his guilty plea in the related criminal case. Thus, Plaintiff may not testify that he did not know that he was fleeing a police officer, or that he did not in fact flee or attempt to elude an officer. Moreover, Plaintiff's motive for fleeing the officer is not relevant to the question of whether Defendant Allen used excessive force, especially given that Allen asserts that did not use *any* force against Plaintiff. Consequently, at this point the Court can only conclude that Plaintiff's significant number of traffic convictions and the fact that that he has had never had a valid driver's license should be excluded at this time because (1) the prejudice to Plaintiff from introduction of that evidence substantially outweighs its probative value and (2) the potential for confusion regarding the issues in the case given that Plaintiff's motive for fleeing the officer does not bear on the critical issue for resolution by the jury.

In short, Plaintiff's motion to exclude evidence of arrests is provisionally granted, and Defendants may not introduce evidence of Plaintiff's previous traffic convictions or his lack of a

license. However, Defendants may ask the Court to revisit the arrest and licensure evidence should (1) Plaintiff's motive for fleeing become relevant at trial or (2) Plaintiff otherwise open the door to such evidence.

### B. Plaintiff's Motion No. 2: Allen's Subjective State of Mind

Plaintiff seeks to bar Defendant Allen from attempting to provide any testimony, evidence, or argument at trial about his subjective state of mind during the incidents alleged in the complaint. Defendant opposes the motion, arguing it cuts too broadly and constitutes an improper attempt to "tip the balance" in Plaintiff's favor.

First, an officer's subjective motivation or state of mind "has no bearing on whether a particular seizure is 'unreasonable' under the Fourth Amendment." *Graham v. Conner*, 490 U.S. 386, 398 (1989). Thus, Defendant Allen's subjective fears, intent, and motivation are totally irrelevant when determining whether the force he allegedly used was reasonable. Thus, the Court grants Plaintiff's motion to the extent that Defendant Allen may not attempt to demonstrate the reasonableness of his use of force based on his subjective fears, intent, and motivation.[1]

However, to the extent that Plaintiff seeks to prevent Defendant from testifying as to why he did certain other things either prior to, or after the incident—e.g., why he documented the lack of damage to his police SUV, etc.—the Court cannot say that such testimony is irrelevant or unduly prejudicial under Rule 403. Particularly in view of Plaintiff's request for punitive damages, Defendant must be allowed to rebut the assertion that he purposefully, knowingly, or recklessly acted in a way that caused Plaintiff's injury. Thus, the Court denies the motion to the extent that Defendant may explain his reasoning for certain actions either prior to or after the incident at issue and counter Plaintiff's arguments for punitive damages.

---

[1] The Court notes that such evidence was unlikely in any event given Defendant Allen's insistence that he did not use *any* force and that Plaintiff's own actions caused his injury.

4

In summary, Plaintiff's motion is granted in part and denied in part. Defendant Allen may not attempt to demonstrate the reasonableness of any use of force based on his subjective fears, intent, and motivation. However, Defendant Allen may testify as to why he did things before and after the alleged events at issue, and address Plaintiff's arguments as to why he should be assessed punitive damages. Additionally, to the extent that Plaintiff attempts to forestall certain lines of closing arguments, Defendants correctly point out "[a]ttorneys have more leeway in closing arguments." See *Soltys v. Costello*, 520 F.3d 737, 745 (7th Cir. 2008). Although valid objections during closing arguments are rare, the Court will of course rule on them if either side feels that the other side has strayed beyond the bounds of acceptable argument at closing.

C.     **Plaintiff's Motion No. 3: Choice of Profession**

Plaintiff moves to bar any testimony about why Defendant or other police witnesses decided to become police officers. Defendants have agreed to this motion, which is therefore granted.

D.     **Plaintiff's Motion No. 4: Jury as Taxpayers**

Plaintiff moves to bar any arguments that appeal to jurors' pecuniary interests as taxpayers. Defendants have agreed to this motion, which is therefore granted.

E.     **Plaintiff's Motion No. 5: Police Officers Risking Their Lives**

Plaintiff moves *in limine* to bar Defendants from arguing that "police officers risk their lives on the job." Defendants have agreed to this motion, which is therefore granted.

F.     **Plaintiff's Motion No. 6: Bar Non-Party Witnesses from Courtroom**

Plaintiff moves to exclude non-party witnesses from being present in the courtroom prior to their testimony. Defendants have agreed to this motion, which is therefore granted. Non-party witnesses from either side are not to be present in the courtroom prior to their testimony. Relatedly,

pursuant to Defendants Motion No. 16, see Section III(P) *infra*, non-party witnesses may not be present for opening statements or the testimony of any other witness.

### G. Plaintiff's Motion No. 7: Character Evidence of Defendants

Plaintiff's move to bar evidence of commendations or awards Defendant Allen may have received in the course of his employment. Defendants have agreed to this motion, which is therefore granted.

## III. Defendants' Motions *In Limine*

### A. Defendants' Motion No. 1: Police "Code of Silence"

Defendants seek to bar Plaintiffs from offering any testimony, evidence, or argument that police officers in general lie, conspire, cover-up or otherwise maintain a "code of silence" to protect their fellow officers. Plaintiff has agreed to this motion, which is therefore granted.

### B. Defendants' Motion No. 2: Other Bad Acts of Police

Defendants move to prohibit any mention, discussion, reference, argument, or testimony about other, non-related events of highly publicized incidents of alleged police misconduct. Plaintiff has agreed to this motion, which is therefore granted.

### C. Defendants' Motion No. 3: Evidence of Chicago Police Department General Orders, Rules, and Regulations

Defendants move to bar Plaintiff from attempting to introduce into evidence, through testimony or argument, that the Defendant Officer or any other Chicago Police officer violated any general orders, special orders, rules or regulations as such evidence is irrelevant to the case at hand. Plaintiff opposes the motion.

The seminal case in this Circuit on the admissibility of testimony, evidence, and argument pertaining to rules, regulations, standards, and General Orders of police or sheriff's departments is *Thompson v. City of Chicago,* 472 F.3d 444 (7th Cir.2006). *Thompson* involved a § 1983 claim

(for excessive force) and a state law claim (for wrongful death) arising out of the arrest of the plaintiff. The district court granted a motion *in limine* seeking to "exclude any reference in testimony, evidence, or argument to the CPD's General Orders, policies, and procedures." *Id.* at 449 & n. 12 (explaining the slight discrepancy between the motion that the court granted and the text of the docket entry reflecting the granting of the motion). The Seventh Circuit affirmed the district court's ruling, both with respect to the use of General Orders as evidence of the federal constitutional violation and as evidence in support of the state law claim.

As to the constitutional violation, the Seventh Circuit categorically stated that "the violation of police regulations or even a state law is *completely immaterial* as to the question of whether a violation of the federal constitution has been established ." *Thompson,* 472 F.3d at 455 (emphasis added); see also *Whren v. United States,* 517 U.S. 806, 815 (1996) (holding that internal police department rules are an unreliable guide to measuring the reasonableness of police conduct); *Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003) (holding that § 1983 "protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices"). In elaborating on its ruling, the Seventh Circuit explained that while evidence, testimony, or argument concerning possible violations of General Orders, rules, or regulations may be relevant to "discipline, promotion, or salary decisions" made by the Defendants' superiors, that kind of information is "immaterial" in proceedings before a district court on claims of constitutional violations and therefore "properly excluded" in rulings on motions *in limine. Thompson,* 472 F.3d at 455. Thus, on the basis of the Seventh Circuit's decision in *Thompson*, any attempt to use General Orders, rules, or policies of the Chicago Police Department as evidence of a federal constitutional violation appears to be forbidden under Rule 401. *Thompson*, 472 F.3d at 454.

In opposition, Plaintiff cites *Edwards v. Thomas*, in which Judge Shadur explained that "police regulations, general orders and officer training provide a relevant (although not conclusive) benchmark for evaluating" the objective reasonable standard set for in *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). *Edwards v. Thomas*, 31 F. Supp. 2d 1069, 1075–76 (N.D. Ill. 1999). However, given *Edwards* was decided before the Seventh Circuit's decision in *Thompson*, the Court questions its continuing applicability. See *Bruce v. City of Chicago*, 2011 WL 3471074, at *2–3 (N.D. Ill. July 29, 2011). Nonetheless, Plaintiff argues that if Defendants are permitted to testify that their assessment of the situation was based (in whole or in part) on their experience and training, then the Plaintiff should be permitted to inquire just what that "experience and training" might entail.

As the Court has previously observed, "[w]hile it is clear under *Thompson* that (i) the proponent of such evidence, testimony, or argument has a heavy burden to shoulder under Rule 401 and Rule 403, and (ii) limiting instructions may not be a viable means of overcoming Rule 403 issues, the Court cannot conclude definitively that there is no scenario in which General Orders, rules, or regulations conceivably could [be relevant]." *Bruce*, 2011 WL 3471074, at *3. Put another way, to the extent that the door remains open under *Thompson,* it is only slightly ajar. See, e.g., *Via v. Lagrand*, 2007 WL 495287, at *6 (N.D. Ill. Feb. 12, 2007) (*"Thompson* did not address the potential admissibility of evidence showing a violation of internal agency rules and procedures with regard to a claim for punitive damages").

In light of the foregoing, the Court grants Defendants' motion *in limine* in part and bars any testimony, evidence, or argument regarding any CPD General Orders, policies, or procedures in support of Defendants' liability under § 1983. The Court reserves its decision as to any such testimony, evidence, or argument in support of a punitive damages claim or in other circumstances

not foreclosed by *Thompson*. Should Plaintiff seek to introduce testimony, evidence, or argument regarding any CPD Office General Orders, policies, or procedures in those limited circumstances, counsel for Plaintiff must notify the Court and counsel for Defendants outside the presence of the jury and with sufficient advance notice to permit analysis under Rules 401 and 403 in light of the applicable Seventh Circuit case law.

### D. Defendants' Motion No. 4: Evidence of Other Police Misconduct

Defendants move to bar any testimony, evidence, argument, or innuendo from Plaintiff, Plaintiff's counsel, or any witness that any non-defendant police officers, non-defendant Chicago Police Department personnel, or any other City of Chicago employee engaged in any misconduct or caused any injury to Plaintiff in any manner. Plaintiff has agreed to this motion, which is therefore granted.

### E. Defendants' Motion No. 5: Evidence of Improper Training, Discipline, or Investigation of Police Officers or of Improper Policies or Procedures

Defendants seek to bar Plaintiff from eliciting testimony or arguing that the City of Chicago improperly trains, disciplines, monitors, or controls police officers. Plaintiff has agreed to this motion, which is therefore granted.

### F. Defendants' Motion No. 6: Other Complaints, Lawsuits, or Disciplinary Proceedings

Defendants move to bar Plaintiff from offering or attempting to introduce any testimony, evidence, or argument regarding the prior disciplinary records of Defendant Allen or other police department personnel involved in this incident. Plaintiff agrees with this motion as to all police officers unless the door is opened; the motion is therefore provisionally granted.

### G. Defendants' Motion No. 7: Indemnity

Defendants move to bar any comment on indemnification by the City of Chicago. Plaintiff agrees with this motion unless the door is opened; the motion is therefore provisionally granted.

### H. Defendants' Motion No. 8: "Sending a Message" to the City

Defendants move to bar Plaintiff from making any argument that the jury should "send a message" to the City of Chicago ("City") or the Chicago Police Department with its verdict, or that the jury should somehow punish the City or the Chicago Police Department with its verdict. Plaintiff has agreed to this motion, which is therefore granted.

### I. Defendants' Motion No. 9: CPD Personnel Paid to Testify

Defendants move in limine to bar any implication or testimony that Chicago Police Department personnel are being paid by the City of Chicago to appear in court and testify. Defendants' motion is provisionally granted. The probative value, if any, of evidence that police personnel are being paid their normal wage to appear in court is substantially outweighed by the potential prejudice of that argument (*i.e.*, a suggestion that by being paid their normal wage, the officers' testimony is more biased in favor of Defendants than it would be if they were not being paid at all). See Fed. R. Evid. 403. Both sides of course are free to explore legitimate bases for potential bias with any witness, but any exploration of whether witnesses are being compensated "on the clock" for their testimony is a waste of the jury's valuable time.

### J. Defendants' Motion No. 10: Speaking with witnesses

Defendants request that once a witness is called to testify, no attorney shall confer with that witness about his or her trial testimony, until the termination of the testimony. Plaintiff has agreed to this motion, which is therefore granted.

### K. Defendants' Motion No. 11: IPRA/COPA Investigation

Defendants move to bar Plaintiff from mentioning the investigation of the Defendant Officer in this case by the Independent Police Review Authority ("IPRA") and/or the Civilian Office of Police Accountability ("COPA") and making any reference to an "internal investigation" or similar terms regarding the incident alleged in the complaint. Plaintiff has agreed to this motion, which is therefore granted.

### L. Defendants' Motion No. 12: Settlement

Defendants move to bar any testimony from Plaintiff or any of his witnesses with regard to any attempts made to settle this matter, including but not limited to testimony that Plaintiff offered or refrained from offering any settlement proposal, testimony that Defendants made any or no offer to dispose of this case, or testimony alleging that Defendants did not accept Plaintiff's attempt to settle this matter. Plaintiff has agreed to this motion, which is therefore granted.

### M. Defendants' Motion No. 13: Failure to Call Witnesses

Defendants move to bar Plaintiff from arguing that Defendants failed to call any witness at trial in this case. Plaintiff has agreed to this motion, which is therefore granted.

### N. Defendants' Motion No. 14: Removing the City as a Named Trial Defendant

While Defendants style the motion as one "to remove the City of Chicago as a named Defendant," their motion amounts to an effort to remove the city from this case's caption. The City of Chicago is a Defendant in this case, and the City of Chicago shall therefore remain named in the case caption and as a trial defendant. This Court and others in this district have consistently denied motions in limine to strike the City of Chicago from the case caption in similar cases. See *Jones v. City of Chicago*, 2017 WL 413613, at *6 (N.D. Ill. Jan. 31, 2017) (citing *Wilbon v. Plovanich*, 2016 WL 890671, at *3 (N.D. Ill. Mar. 9, 2016); *Bruce*, 2011 WL 3471074, at *4));

*Smith v. Garcia*, 2018 WL 461230, at *9 (N.D. Ill. Jan. 18, 2018). Moreover, keeping the City of Chicago as a named defendant will not be unduly prejudicial, given that the jury will already know that the City of Chicago employs Defendant Allen.

### O. Defendants' Motion No. 15: City Attorneys

Defendants request this Court bar Plaintiff from making any reference to Defendants' attorneys as "Corporation Counsel," "Assistant Corporation Counsel," "The City lawyers," "The City," or similar terms. Plaintiff has agreed to this motion, which is therefore granted.

### P. Defendants' Motion No. 16: Non-Party Witnesses

Defendants request that the Court exclude all non-party witnesses from the attorneys' opening statements and the testimony of other witnesses, including party witnesses. Plaintiff has agreed to this motion, which is therefore granted.

### Q. Defendants' Motion No. 17: Fear of Police

Defendants move to bar Plaintiff from testifying about his fear of police or negative unrelated past experiences with police officers. Plaintiff does not contest this motion and agrees that Plaintiff may not testify as to his previous experiences with police. However, Plaintiff requests that he be permitted to testify as to the effects this incident has subsequently had on him vis-à-vis his fear of police. Given Plaintiff has agreed to the motion, at least in part, the Court grants Defendants' motion and Plaintiff may not testify in his case-in-chief about any negative incidents he may have had with police prior to the events at issue in this case. However, any testimony offered by Plaintiff in regard to his fear of police as a result of this incident, may be a double-edge sword. If Plaintiff contends that the encounter at the center of this lawsuit had a dramatic effect on his capacity for future interactions with the police, he may be opening the door to cross-examination by Defendants on the extent of Plaintiff's prior interactions with police, which may

be necessary to place in context the credibility of his trial testimony. The parties should request an opportunity to revisit this issue during trial, outside the presence of the jury and preferably on a break—or at sidebar, if necessary—if counsel plans to elicit any such testimony from Plaintiff.

### R. Defendants' Motion No. 18: *Heck-barred Testimony*

Defendants move under *Heck v. Humphrey*, 512 U.S. 477 (1994), and the doctrine of collateral estoppel to bar Plaintiff from presenting any testimony, evidence or argument at trial that is inconsistent with his guilty plea to the offense of Fleeing or Attempting to Elude a Peace Officer. Although Plaintiff initially opposed this motion, he has since agreed to it and thus the Court grants the motion.

### S. Defendants' Motion No. 19: Spoliation Instruction

Defendants request the Court enter provide a spoliation instruction to the jury on account of Plaintiff's sale of the motor scooter at issue after filing this lawsuit. Plaintiff opposes the motion, arguing that Defendants have not shown that the unavailability of the scooter was intentional or done in bad faith.

As the moving party, Defendants must establish that the evidence was destroyed in bad faith in order to receive an adverse inference against plaintiff. *Rummery v. Illinois Bell Tel. Co.*, 250 F.3d 553, 558 (7th Cir. 2001) (denying adverse inference instruction when moving party "offered no evidence, other than his own speculation, that [the documents] were destroyed to hide" incriminatory evidence). For example, in *Bracey v. Grondin*, the Seventh Circuit concluded that the district court had properly declined to grant an adverse inference in favor of plaintiff where he had not shown that the defendants destroyed the video in question because of any damaging content it may have contained. 712 F.3d 1012, 1020 (7th Cir. 2013). As Judge Flaum made clear in *Bracey*, "[s]imply establishing a duty to preserve evidence or even the negligent destruction of

evidence does not automatically entitle a litigant to an adverse inference instruction in this [C]ircuit."

Contrary to Judge Flaum's instruction, Defendants have not provided any reason to believe that Plaintiff sold the scooter specifically to hide evidence. Rather they simply point to the fact that after this case's initiation, Plaintiff sold the scooter without taking any pictures of it, or documenting any repairs to it. While Plaintiff likely did have a duty to preserve the evidence, namely the scooter, without more the Court simply cannot infer that Plaintiff sought to hide incriminating evidence. Moreover, the unavailability of the scooter itself is somewhat ameliorated as an evidentiary matter because (according to Plaintiff) the police officers on the scene took photographs of the scooter within minutes of the incident. In a similar vein, the Court is not aware of any proposal that the jury view the squad car involved in the accident, though it too might offer some marginal information to the jury (assuming that it is the same condition as it was on the date of the accident). Oddly, given the opportunity for either vehicle—the scooter or the squad car—to sustain additional damage due to continued use, contemporaneous photographs of decent quality likely would be much more probative than a jury-viewing years later. In any event, nothing prevents Defendants from questioning Plaintiff at trial regarding the disposition of the scooter or from pointing out in their closing argument the absence of any physical evidence of damage to the scooter if the trial testimony and exhibits support such an argument. What they are not entitled to based on the current state of the record is a spoliation instruction.

### T. Defendants' Motion No. 20: Exclude Witnesses

Defendants move to bar James and Ethel Thomas from testifying in this matter because Plaintiff was unable to provide adequate information about them and as a result Defendants were unable to depose them during discovery. Plaintiff responds that the witnesses should not be barred

as they were listed in Plaintiff's MIDP disclosures and in the pretrial order. Plaintiff also states that he provided Defendants with as much contact information as he had, as soon as he had it. As discussed at the final pre-trial conference, Plaintiff has served both James and Ethel Thomas with trial subpoenas. If Plaintiff intends to call either or both at trial, then they must sit for a short deposition prior to testifying. The Court expects that both depositions could be accomplished within an hour. If these witnesses are not able and willing to be deposed, they will be barred from testifying at trial.

## IV. Conclusion

For the reasons stated above, the Court grants (at least provisionally) Plaintiff's motions *in limine* Nos. 1, 3–7 [58, 60, 61, 62, 62, 63, 64] and grants in part and denies in part Plaintiff's motion No. 2 [59]. Defendants' motions *in limine* [56] are granted in part and denied in part. The Court grants (and provisionally grants) Defendants' motions Nos. 1, 2, 4–13, 15–16 and 18; grants in part and denies in part Defendants' motion No. 3; denies Defendants' motions Nos. 14 and 19–20; and Court grants in part and defers final ruling in part on Defendants' motions Nos. 3 and 17. This case remains set for a jury trial to commence on July 8, 2019.

Dated: July 1, 2019

Robert M. Dow, Jr.
United States District Judge